MATTER OF C——F——L——

In VISA PETITION Proceedings

VP 3-I-116868

*Decided by Board October 2, 1958*

*Commissioner's Motion October 15, 1958*

*Board Decision October 31, 1958*

*Decided by Attorney General April 27, 1959*

Adopted child—Two-year legal custody and residence must be with both adoptive parents if two exist—Nonquota status denied to adopted child who resided with only one parent.

(1) The two-year legal custody and residence required of an adopted child by the 1957 amendment to section 101(b)·(1) of the 1952 act must be had with both of the adoptive parents where two exist, or with one when the family unit consists of only one adoptive parent. (Cf. *Matter of M——*, VP 2-I-34174, Int. Dec. No. 988.)

(2) Child adopted abroad in 1947 who did not reside with adoptive father for two year period (the father maintaining residence in the U.S.) is not entitled to nonquota status despite continuous residence since infancy with adoptive mother.

**BEFORE THE BOARD**
(October 2, 1958)

**Discussion:** The case comes forward on appeal from the order of the District Director, New York District, dated February 12, 1958, denying the visa petition on the ground that the petitioner has failed to establish that he is the adoptive parent or that the beneficiary while under the age of 14 has been in the legal custody of or resided with the petitioner for two years following his adoption.

The petitioner, 44 years old, male, a native of China and a naturalized citizen of the United States, seeks nonquota status on behalf of the beneficiary, his alleged adopted child. The beneficiary was born September 24, 1947, in China. A supporting affidavit by the petitioner's wife, whom he married on December 10, 1937, sets forth that the natural father of the beneficiary died on June 12, 1947, and that on December 15, 1947, while the natural mother was still living, she adopted the beneficiary and that the beneficiary has lived with her as their adopted child with the consent of her husband; that the natural mother of the adopted child died on February 5, 1948. The

151

adoptive mother reared the child but left him with her own mother in Hong Kong when she left for the United States in July 1957. The affidavit concludes that the beneficiary is her adopted child with the consent of the husband who has been supporting her and the child all during that time, and that the child has lived with her since infancy and that she has treated him as her òwn child.

The file also contains a copy of a notarized statutory declaration executed by the petitioner on February 16, 1957, in Hong Kong which sets forth that on December 15, 1947, the petitioner's wife who was then residing at Cheung On Village, at the request of the surviving parent of the child and with his consent adopted the said child as their own child according to Chinese law and custom; that since December 15, 1947, the child has been residing with and under the care of his wife; that on December 15, 1947, a dinner party was given by his wife in celebration of the adoption of the child in accordance with Chinese law and custom; and there was attached to the affidavit a photograph of the adopted child.

In addition, there has been submitted a certificate issued at the Chinese General Consulate at New York dated January 30, 1958, in which it is set forth that on January 9, 1958, the notarized statutory declaration referred to above was exhibited to the Consulate General and on January 9, 1958, the petitioner and his wife appeared at the Consulate and were questioned regarding the adoption. In order to protect the interests of the adopted person the Consulate General requested the petitioner and his wife to reiterate in writing the continuation of this adoptive relationship and their determination to observe the right and the duty to protect, educate, and maintain their minor child. The certificate concludes that the Consulate General is satisfied that the adoption was effected in good faith and that the petitioner and his wife were discharging faithfully their duties as parents. At oral argument counsel exhibited pictures of the mother and adoptive child at the age of 2 and 3 years and, in addition, a photograph of the petitioner, his wife, and the child in 1957, as well as individual pictures of the beneficiary.

The first question presented is whether there has been a valid adoption in accordance with the law of the place of adoption. The parties involved are all native Chinese persons and the provisions of the Chinese Civil Code, promulgated on May 23, 1929, are applicable.[1] Article 1074 of the Chinese Civil Code provides that when

---

[1] Under the law of the Republic of China, when a party to an adoption is an alien (other than a Chinese), the Rules on the Conflict of Law, effective June 6, 1953, govern. Article 18 of this law provides: "The conditions of adoption and the dissolution thereof are determined as to each party by the law of his or her home country. Regarding the effect of adoption, the law of the home country of the adopting parents governs."

a married person adopts a child, he must do so jointly with his spouse. Article 1079 of the Chinese Civil Code provides:

*Article 1079.* Adoption shall be effected in writing, unless the person to be adopted has been brought up as a child of the adopting parents since infancy.

The Far Eastern Law Division of the Library of Congress has provided a memorandum on the Formality of Adoption under the law of the Republic of China. Concerning the "savings clause" in article 1079 dealing with the "infancy" adoption which is not required to be in writing, according to an advisory opinion of the Judicial Yuan, the terminology of the so-called "infancy" provided in the savings clause of Article 1079 of the Civil Code, shall be construed to mean a child not more than 7 years of age (Judicial Yuan Advisory Opinion, 1942, No. Yuan 2332). To further illustrate the meaning of this statutory provision, a Supreme Court decision states that to effect an adoption of a person over 19 years of age as an adopted son, without a written document, is in itself not complying with the formality required by law as provided in article 1079 of the Civil Code. In accordance with article 73 of the Civil Code, which provides that a juristic act which is not in the form prescribed by law is void unless otherwise provided by law, it is not valid and, therefore, the legal relationship of an adopted son and the adopting parents had never been created (Supreme Court, 1940, No. Shang 1817).

There has been evidence submitted in the form of affidavits and photographs that the beneficiary was adopted in China when less than 3 months old by the petitioner's wife with the consent of her husband. There appears, therefore, to have been a valid infancy adoption which was not required to be in writing as provided in article 1079 of the Chinese Civil Code. Furthermore, in view of the requirement in article 1074 that where a married person adopts a child he must do so jointly with the spouse, it would appear that there was effective an adoption by both of the adoptive parents, inasmuch as the husband has sworn he consented to the adoption in 1947.

The second point to be determined is whether the beneficiary qualifies as an adopted child under the immigration laws. A child of a United States citizen is eligible for nonquota status. By amendment contained in section 2 of the Act of September 11, 1957 (71 Stat. 639; Public Law 85–316), the definition of the term "child" contained in section 101(b)(1) of the Immigration and Nationality Act was expanded to include:

(E) a child adopted while under the age of 14 years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years * * *.

153

By this amendment the definition of "child" was extended to include adopted children under limited circumstances. The legislative history reveals the amendment was considered desirable to prevent hardship in cases where the child was chargeable to a heavily oversubscribed quota and would not otherwise be able to accompany his adoptive parents; the amendment included adequate safeguards to prevent abuse.[2]

The legislative history discloses that the amendments to the definition of the term "child" as used in Titles I and II of the Immigration and Nationality Act were enacted for the purpose of alleviating certain hardships which had arisen as a result of an administrative interpretation that a child born out of wedlock to a woman who subsequently marries a man not the father of the child is not included within the term "stepchild," and to clarify the law so that an illegitimate child would in relation to its mother enjoy the same status under the immigration laws as a legitimate child. The amendment to include adopted children in those cases where the child was adopted while under the age of 14 years and who had thereafter been in the legal custody of and resided with the adopting parent for at least two years was likewise for the purpose of preventing hardship. Thus, throughout the amendatory legislation in the Act of September 11, 1957, there is set forth the principle of amending the immigration laws for the purpose of providing for more generous treatment of children and demonstrating the concern of Congress with the problem of keeping families of United States citizens and immigrants united by affording a more liberal treatment of children so as to implement the underlying intention of the immigration laws regarding the preservation of the family unit.[3]

The legislative history fails to disclose what abuses were intended to be guarded against in adoption cases. However, it is evident from the requirement that the adoption be limited to children adopted while under the age of 14 years who had been in the legal custody of and resided with the adopting parent for at least two years that it was intended to prevent *ad hoc* adoptions which were undertaken merely for the purpose of circumventing the immigration laws.

The statute requires legal custody and residence for two years with "the adopting parent or parents." No light is shed by the legislative history as to why the term "adopting parent or parents" was used in the singular and plural in the alternative. Since the legislative history indicates no restriction on the use of these terms in the alternative, and bearing in mind that the amendment was enacted for the purpose of liberalizing the immigration laws to overcome

[2] Senate Report No. 1057 (85th Congress, 1st Session), pages 3 and 4.

[3] 2 U.S. Code Congressional and Administrative News, pp. 2020 and 2021 (85th Congress, 1st Session).

hardships which had been revealed by the prior law, it is felt that a liberal construction should be adopted insofar as possible in line with the language used.

As used in the immigration laws, a father or mother is synonymous with the term "parent" where the necessary relationship exists (section 101(b)(1), (2), Immigration and Nationality Act. In the instant case, the beneficiary was adopted in China in infancy and such an adoption has been shown to constitute a legal adoption in China. The child has thereafter been for at least two years in the legal custody of and has resided with the adopting mother who by definition is an adopting parent as provided in section 101(b)(1) of the Immigration and Nationality Act. The facts of the case satisfy the definition of an adopted child as provided in section 101(b)(1)(E). The element of fraud or abuse does not appear to be present since this adoption occurred long prior to the present amendment and even the statutory declaration executed by the present petitioner in Hong Kong on February 16, 1957, was prior to the enactment of the amendment on September 11, 1957. In addition, other evidence in the form of photographs has been submitted to show that this beneficiary was reared by the mother since at least the age of 2 years.

It, therefore, appears that we have existing a *bona fide* family unit of adoptive parents and adopted child which has been in existence for more than 10 years past. It would undoubtedly be the very sort of hardship that the amendment was designed to alleviate if it were to be held that this child could not join its adoptive parents in the United States.

The Service has made reference to the provisions of section 205 of the Immigration and Nationality Act which set forth a procedure for granting nonquota or preference status by reason of relationship. We regard this merely as a procedural requirement for the obtaining of nonquota or preference status by reason of relationship, and the requirement to be satisfied as to relationship is the definition set forth in section 101(b)(1). If the beneficiary satisfies that definition he is a part of the class to whom nonquota or preference status attaches as a result of the relationship.

In the instant case it has been shown that the legislation was intended to fulfill humane considerations involved in keeping intact the family unit. Based upon the wording of the statute, the beneficiary satisfies the requirement of the statute inasmuch as the beneficiary was lawfully adopted while under 14 years of age and subsequent thereto was in the legal custody of and resided with the adopting parent-mother for at least 2 years. There is a literal compliance with the law. The statute requires no more.

The statute does not read as the Service would interpret it, in the legal custody of and residing with the *petitioning* adopting parent

or parents for at least 2 years. Had Congress intended such a construction, it could have easily so provided by specific language. No such qualification is set forth in the definition and in view of the liberal Congressional intent, it is believed that no such restriction is warranted. Accordingly, the visa petition will be approved.

**Order:** It is ordered that the visa petition be approved for nonquota status on behalf of the beneficiary.

**BEFORE THE CENTRAL OFFICE**
(October 15, 1958)

**Discussion:** The issue presented is whether the beneficiary is the child of the petitioner within the meaning of the immigration laws so as to be entitled to nonquota status. The district director concluded that the petitioner had failed to establish that he was the adoptive parent or that he had met the requirements of the law as to legal custody and residence. By order dated October 2, 1958, the Board of Immigration Appeals reversed the decision of the district director denying the petition and directed that the visa petition be approved.

Section 2 of Public Law 85-316 approved September 11, 1957 (71 Stat. 639), amended the definition of the term "child" contained in section 101(b)(1) of the Immigration and Nationality Act (8 U.S.C. 1101(b)(1)) so that the relevant portion now provides:

(b) As used in titles I and II—
(1) The term "child" means an unmarried person under twenty-one years of age who is—

    *        *        *        *        *        *        *

(E) a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years:
*Provided,* That no natural parent of any such adopted child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this act.

Included within the term "nonquota immigrant" as defined by section 101(a)(27) is "(A) an immigrant who is the child or the spouse of *a citizen of the United States*" (emphasis supplied). The procedure for obtaining nonquota or preference quota status on behalf of an alien is outlined in section 205 of the Immigration and Nationality Act which provides in part as follows:

(b) Any citizen of the United States claiming that any immigrant is *his* * * * *child* and that such immigrant is entitled to a nonquota immigrant status under section 101(a)(27)(A), * * * may file a petition with the Attorney General. * * * (Emphasis supplied.)

Citizenship of the petitioner is conceded. The beneficiary was born in China on September 24, 1947, and it is alleged both of his natural parents are deceased. Petitioner, however, claims the beneficiary as his adopted child.

156

Affidavits have been submitted indicating that in 1947 the petitioner's wife, at the request of the child's natural mother and with the consent of the petitioner, adopted the child. Except for a brief period in 1957, the petitioner has been resident and physically present in the United States since prior to the alleged adoption. The petitioner and beneficiary have admittedly maintained no actual residence together except for a period of a few months in 1957.

Assuming a valid adoption under Chinese law, the petition must nevertheless be denied as a matter of law. The fact that a parent-child relationship may exist under a foreign law or for some purposes is not the controlling consideration in this case. Such situations have previously arisen but the visa petition has nevertheless been denied where the application of the immigration laws required that result (*Matter of M——*, 5 I. & N. Dec. 120 (Atty. Gen., 1953); *Matter of B——*, 5 I. & N. Dec. 733 (1954); *Matter of S*  , 5 I. & N. Dec. 289 (1953)). The sole legal issue to be determined is whether a parent-child relationship exists between the citizen petitioner and the beneficiary within the contemplation of the immigration laws so as to entitle the beneficiary to nonquota status where the *citizen petitioner* and beneficiary have not resided together for a period of 2 years.

By section 205(b), a citizen may petition for nonquota status on behalf of *his* child. The relevant portion of section 101(a)(27) defines a nonquota immigrant as the *child* of a *citizen*. Manifestly the relationship must exist between the citizen petitioner and the beneficiary irrespective of the relationship between the beneficiary and the petitioner's spouse. The statute confers a personal benefit upon the citizen (*Matter of W——J——W——*, 7 I. & N. Dec. 706 (1958)). It would, therefore, seem to follow that the statutory prerequisites must be fulfilled by the relationship between the petitioner and the beneficiary before the benefit of nonquota status may be granted.

Petitioner alleges that he consented to the adoption of the child by his wife in 1947 and it may be assumed that if there was a valid adoption, the requirements of legal custody have been met. However, the statute further provides that the child reside with the adopting parent or parents for 2 years. Since Congress provided for both legal custody *and* residence, it must be concluded that an actual residing together in addition to legal custody is required. The Service contends that the beneficiary must reside with the adopting citizen parent for 2 years before he may be considered a child under the provisions of the law. This interpretation is required by the clear wording of the statute which permits the petition to be filed only by the citizen parent, confers nonquota status only upon the child of the citizen, and sets forth certain prerequisites with which

157

the beneficiary must comply before he may be considered to be a child.

The wording of the statute affords no basis for a conclusion that a residence by the child with the *wife* of the petitioner will suffice. By conferring nonquota status upon the adopted alien child who has resided for 2 years with the adopting parent, Congress manifested a desire to preserve *existing bona fide family* units of a *citizen*. A situation where the adopted child has never resided with the citizen parent is most certainly not an existing family unit of the *citizen*.

It is undisputed that the requirements for legal custody and residence were included as safeguards to prevent abuse. An analysis of the abuses practiced in the past will demonstrate that the fraudulent claim to relationship in order to procure preferential treatment under the immigration laws has been one of the most troublesome.

Particularly with respect to residents of countries where official records of marriages and births are not maintained, relationship must be established by means of parole evidence. In many such cases, citizens who have resided in the United States for many years have claimed as their offspring conceived during brief visits abroad, children with whom no residence as a family unit was ever maintained. Detection of spurious claims was a monumental task. This very problem was brought to the attention of the Senate Committee on the Judiciary in connection with an investigation of our immigration system and the Committee made special comment of the "widespread fraud" resulting from unfounded claims to relationship based upon periodic visits abroad by citizens resident in the United States. Furthermore, the Committee expressly cautioned that "it would be unwise to liberalize unduly the provisions of the law pertaining to the admission of adopted children of American citizens * * *." (Senate Report No. 1515, 81st Cong., 2d Sess., April 20, 1950, pages 468, 469.)

The problems arising from these cases where there is maintained no residence as a family unit prior to the application for admission of the foreign-born child has also been the subject of judicial comment *(Mar Gong v. McGrannery*, 109 F. Supp. 821 (N. D. Cal., 1952, remanded 209 F.2d 448); *United States ex rel. Dong Wing Ott v. Shaughnessy*, 220 F.2d 537, 540 (C.A. 2, 1955), cert. den. 350 U.S. 847). It may, therefore, be assumed that Congress was keenly aware of the frauds prevalent in cases of alleged relationship between the resident parent and the non-resident child. In almost all of these cases, the alien spouse had remained abroad with the alleged child and could establish residence with the child. Consequently, when Congress created a requirement for 2 years' residence with the adopting parent or parents as a *safeguard against fraud*, residence with the citizen parent must have been intended. Nonquota status

158

may be conferred upon the adopted child but where residence with the adoptive citizen parent for 2 years has been established. This will insure the preservation *only* of an existing *bona fide* family unit of which the citizen parent is a part. No other interpretation will serve to carry out the legislative intent that the provisions constitute a safeguard against abuse.

To support the Board's interpretation, reference is made to the fact the statute employs the alternative term "adopting parent or parents." The answer is simply that in the absence of express statutory prohibition, either spouse may adopt a child without the other joining, or an unmarried person may adopt a child. 2 C.J.S. Adoption of Children, sections 9(b), 10. Furthermore, the particular proceeding under the immigration laws might involve one or both parents. The term is employed in a definition and was made broad enough to include various possibilities.

The increased possibility of fraud through the interpretation adopted by the Board is demonstrated by this very case. To some extent, the success of spurious claims to relationship was curtailed by use of the blood-grouping test (*Matter of L——F——F——*, 5 I. & N. Dec. 149 (1953)). Of course, such tests will serve no purpose with respect to adopted children. However, an absence from the United States for 2 years of the citizen petitioner may be subject to official verification. By holding that no residence of the beneficiary with the petitioner need be established, this possibility of detecting fraud is eliminated.

No documentary evidence of adoption or residence of the child with either adopting parent has been submitted in this case and apparently such evidence is unavailable. Great stress is placed by the Board upon the fact that the declaration by the petitioner in Hong Kong was executed on February 16, 1957, prior to the enactment of Public Law 85–316. However, this affidavit was executed in support of an application for an immigrant visa under the Refugee Relief Act and was undoubtedly made in an effort to comply with the provisions of section 5 thereof (67 Stat. 400). The document is entitled to no greater weight than any other self-serving declaration made to gain an advantage under the law.

The certificate issued by the Chinese Consulate General is based solely upon the statements of the petitioner and his wife and constitutes no independent evidence of adoption. Under Chinese law, an "infancy" adoption is not required to be in writing.

In its decision, the Board comments upon certain photographs exhibited by counsel at oral argument but which have never been made a part of the record file. There is no indication that such photographs were presented to the district director charged with the responsibility for making the initial determination. The record

fails to disclose when, where, and under what circumstances the photographs were taken. No information is submitted concerning the relationship which existed between the natural mother and the petitioner or his wife to determine whether a possibility for the photographs other than residence together exists.

At most, the photographs could have been given only a cursory examination at the time of the oral argument. Certainly, the Board is not unaware of the use of "doctored" photographs to support a claimed relationship. (See comment in *Matter of L——F——F——*, 5 I. & N. Dec. 149, 153). Manifestly, the photographs may be given no consideration in the determination of this case.

From the foregoing, it is evident that sole reliance has been placed upon the uncorroborated, self-serving declarations made by the parties in order to qualify the beneficiary for nonquota status under the immigration laws. In view of the concern expressed by Congress with respect to the possibility of fraudulent adoptions to circumvent the law, such uncorroborated statements should be viewed with caution. The possibility of detecting fraud in this type of case is further reduced if no residence with the petitioner is required.

The Service does not contend that a fraud has been practiced in the instant case. The Service does contend that the interpretation of the statute adopted by the Board that the petitioner need not prove residence with the child will facilitate the perpetration of frauds particularly in cases where the proof consists of parole evidence.

The legislative scheme calls for proof that the beneficiary has resided with the adopting citizen parent for at least 2 years in order to qualify as a child of the petitioner within the meaning of the immigration laws. Adopted children who are *bona fide* members of the family of the citizen will thereby be enabled to enter as nonquota immigrants. There is no family group *of the citizen* to *preserve* where the adopted child has never resided with the citizen parent. At the same time, the possibility of fraud through adoptions for the purpose of evading the quota provisions of the law will be reduced. Residence of the child with the citizen parent is more likely subject to official verification and lends considerable support to the conclusion that a parent-child relationship between the petitioner and beneficiary truly exists. This is the safeguard against abuse which Congress has provided.

In view of the foregoing, it is believed that the instant application must be denied. Because of the importance of the issue presented, review by the Attorney General is deemed essential.

*Request is hereby made* that this case be referred to the Attorney General for review pursuant to 8 CFR 6.1(h)(1)(iii).

**Discussion:** The case is before us on motion of the Acting Assistant Commissioner, Examinations Division, dated October 15, 1958, requesting that the case be referred to the Attorney General for review pursuant to 8 CFR 6.1(h)(1)(iii).

The facts are fully set forth in our prior order of October 2, 1958, and the question of law involved is set forth in that order and in the present motion of the Service. Briefly, the petitioner, a native of China and a naturalized citizen of the United States, seeks nonquota status on behalf of the beneficiary as his adopted child. The petitioner was married in China on December 10, 1937. The beneficiary was born September 24, 1947, and was adopted in China during infancy on December 15, 1947, by the petitioner's wife with the consent of her husband, who was then in the United States. The child resided with the adoptive mother until she left for the United States in July 1957. The child resided with the adoptive father, the petitioner, when he went to China in 1957 to bring back his wife, and presently resides with the mother of petitioner's wife. It appears that the petitioner has maintained and supported the beneficiary. Under Chinese law, which is more fully set forth in our order of October 2, 1958, it appears that there was a valid adoption of the beneficiary by the petitioner and his wife and the Service apparently concedes, for the purpose of this case, that there was a valid adoption.

The issue put in focus by this motion is whether the beneficiary qualifies as an adopted child under the pertinent provisions of the immigration laws in view of the definition of the term "child" as contained in section 101(b)(1) of the Immigration and Nationality Act (8 U.S.C. 1101(b)(1)), as amended by section 2 of the Act of September 11, 1957 (P.L. 85–316) which provides that:

(1) The term "child" means an unmarried person under twenty-one years of age who is— * * *

(E) a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents for at least two years * * *.

The position of the Board is fully set forth in our order of October 2, 1958, and no purpose would be served in repeating those arguments. However, it is believed appropriate to answer the contentions made in connection with the Service motion. The Service concedes the citizenship of the adoptive father and even assumes that there has been a valid adoption under Chinese law. If there has been a valid adoption, under Chinese law it is a valid adoption as to both the adopting mother and father, the latter having given his

consent to the adoption under Chinese law which requires that the adoption be by both spouses jointly.

Section 205(b) referred to by the Service in its motion is simply a procedural section relating to the filing of a visa petition for anyone claiming that an immigrant is entitled to nonquota or preference status by means of such relationship, and, as has been demonstrated, the relationship of adoptive parent and child exists in this case. The definition of adopted child as set forth in section 101(b)(1)(E) of the Immigration and Nationality Act, as amended, does not require that the child be in the legal custody and reside with the *citizen* or *petitioning* adopting parent, but states simply that the child be in the legal custody of and reside with the adopting parent or parents. If it were intended that the citizen parent must return to the foreign country to adopt a child and reside with the adopted child for 2 years, such a cumbersome requirement would have been specifically written into the immigration laws and would not be left to implication. It is far more natural and logical that the wife and not the citizen husband, who is the wage earner, be permitted to adopt a child while remaining in the foreign country while waiting for her husband to send for her than to insist upon the interpretation sought by the Service.

The Service refers to *Matter of M——*, 5 I. & N. Dec. 120; *Matter of B——*, 5 I. & N. Dec. 733; and *Matter of S——*, 5 I. & N. Dec. 289, to support the argument that visa petitions have been denied where a parent-child relationship may exist under foreign law or for some purposes but have been denied where the application of the immigration laws required that result. The applicability of those cases to the present question is not clear. The first case involved a child born out of wedlock prior to the marriage of a woman to a petitioning United States citizen who was ruled not to be a stepchild within the meaning of section 101(b)(1)(B) of the Immigration and Nationality Act. The second case, *Matter of B——*, *supra*, involved an attempted adoption at the Portuguese Consulate in New York of an illegitimate son residing in Portugal by a naturalized citizen residing in New Jersey. And this was held not to constitute a valid adoption, upon clear principles of conflicts of law. The third case, which occurred before the present amendment, simply stated that adoption by a person not the natural father of the child does not render the child legitimate and pointed out that the Immigration and Nationality Act at that time had no provision regarding adopted children.

It is unfortunate that the Service has chosen to cite *Matter of M——*, 5 I. & N. Dec. 120, because this administrative interpretation was the subject of pointed criticism by the Committee on the Judiciary in amending section 101(b)(1) of the Immigration

and Nationality Act so as to make sure that a child in such a situation could be treated as a legitimate child and reiterated the past legislative history of the statutory language which made it clear that the underlying intent of the legislation, both past and present, was to preserve the family unit upon immigration to the United States (2 U.S. Code Congressional and Administrative News (85th Cong., 1st Sess.), pp. 2020–1). Thus, since it has been assumed that there has been a valid adoption by both parents under Chinese law, which occurred many years ago, and that the adopted child lived with and was reared by the adoptive mother and was supported by the adoptive father, there can be little doubt of the existence of a *bona fide* family unit which it was the purpose of the amended immigration law to preserve.

The Service next contends that the beneficiary must reside with the adopting citizen parent for 2 years before he may be considered a child under the provisions of the law and points with apprehension to possible spurious claims of children and to "widespread fraud" resulting from unfounded claims to relationship based upon periodic visits abroad by citizens resident in the United States; and refers to Senate Report No. 1515, 81st Cong., 2d Sess., April 20, 1950, pages 468, 469, as authority for the proposition that the Committee on the Judiciary expressly cautioned that it would be unwise to liberalize unduly the provisions of law pertaining to the admission of adopted children of American citizens. However, the Service is strangely silent concerning the fact that as a result of the hardship arising out of the failure to make provisions for adopted children, this 1957 amendatory legislation was enacted for the express purpose of preventing hardships in cases where the child would not otherwise be able to accompany his adoptive parents. (See Senate Report No. 1057 (85th Cong., 1st Sess.), p. 4; 2 U.S. Code Congressional and Administrative News (85th Cong., 1st Sess.) p. 2017).

The fear of fraud in those cases where documents are not available and adoption must be proved by other evidence would not be solved by the provisions urged by the Service. Let us assume that a couple had adopted a child in infancy in China and had legal custody of the child, and the child had resided with them for more than two years and thereafter the adoptive father comes to the United States and has become a citizen. It would still be necessary upon the petition filed by the citizen adoptive father that proof of relationship and of the identity of the adopted child in the absence of official records be established to the satisfaction of the American Consul and the Immigration Service and to uncover any attempted fraud.

In its preoccupation with fraud in Chinese cases, the Service has referred to the court cases of *Mar Gong* v. *McGrannery*, 109 F. Supp. 821, D.C. Cal., 1952, remanded 209 F.2d 448, and *United States ex rel. Dong Wing Ott* v. *Shaughnessy*, 220 F.2d 537, 540 (C.A. 2, 1955). The latter merely held that the requirement of a blood test as a part of the chain of evidence in establishing relationship was not a violation of due process and was justifiable where there was a lack of reliable government records of birth and parentage, difficulty of access to the area from which the claimed family groups came, and long absences from the family group of the citizen father. In reversing and remanding the *Mar Gong* case, the Ninth Circuit criticized the lower court judge who did not confine himself to the evidence before him but improperly gave weight to experiences in other cases involving a fraudulent pattern in arriving at findings adverse to the plaintiff in that case.

The Service refers to the employment of the alternative term in section 101(b)(1)(E) employed in the definition relating to "adopting parent or parents" and states that in the absence of express statutory prohibition either spouse may adopt a child without the other joining, or an unmarried person may adopt a child. With this construction, we have no quarrel; but if no express statutory prohibition was required, it was unnecessary to place this phrase in the alternative unless it was intended that the custody and residence could be with the one adopting parent or with either adopting parent, if such were the case. It is believed that in interpreting this provision to mean *citizen* adopting parent or parents, the Service has perhaps unwittingly confused section 2 of the Act of September 11, 1957 with section 4(b) of the same act, which in relation to eligible orphans provides for orphans who have been lawfully adopted abroad by a United States citizen and spouse or who will be adopted in this country by a United States citizen and spouse. If Congress saw fit to specify in section 4(b) that the adoption be by a citizen parent, it could easily have inserted the same requirement in section 2 of the same act.

Although no objection was made at the time, the Service criticizes the Board order for commenting upon certain photographs exhibited by counsel at oral argument, which it states had never been made a part of the record file or presented to the district director before making an initial determination, and ominously refers to the use of doctored photographs to support a claimed relationship without one scintilla of evidence that the photographs in the instant case were doctored or fraudulent. The Service is, of course, fully aware that these photographs must eventually be submitted to the American Consul who must be satisfied as to relationship and identity before issuing any visa.

In short, there has been demonstrated no basis for the Service apprehension that the interpretation placed upon the amendatory legislation will enhance fraudulent claims regarding adopted children. Congress was not primarily involved with the question of fraud, which must be uncovered by investigation conducted by the American Consulate abroad and by the Immigration Service just as any other claim of relationship where there is an absence of governmental records of birth, parentage, or, as in the present case, of adoption. Congress was greatly interested, however, in seeing that *bona fide* family units including adopted children were not separated and were permitted to come to this country. It did put certain limitations on adopted children for the purpose of preventing adoptions which were entered into merely for the purpose of permitting advantage to be taken of the immigration laws and for this reason inserted the requirement of two years' residence and legal custody. However, once it has been shown that these requirements have been met, and that there had existed for the required period a *bona fide* family unit, the beneficiary should thereafter be admitted to this country if it is established that he is the adopted child of the petitioner. The spectre of fraud drawn by the Service should not be permitted to defeat the intent of Congress in enacting this amendatory legislation for the purpose of providing for a more generous treatment of children in keeping with the concern of Congress with the problem of keeping families of United States citizens and of immigrants united. It is believed that no change should be made in our order of October 2, 1958.

**Order:** In accordance with the provisions of 8 CFR 6.1(h)(1)(iii) the case is referred to the Attorney General in accordance with the request of the Acting Assistant Commissioner.

### BEFORE THE ATTORNEY GENERAL
#### (April 27, 1959)

**Order:** The order of the Board of Immigration Appeals, dated October 2, 1958, approving a petition for nonquota immigration status under section 205(b) of the Immigration and Nationality Act in this case, is disapproved and the order of February 12, 1958, denying the petition, is reinstated for the reasons herein stated.

---

This case is before me pursuant to the provisions of 8 CFR 3.1 (h)(1)(iii) for review of the decision by the Board of Immigration Appeals.

The record establishes that the petitioner is a citizen of the United States by naturalization, the parent of a son, almost 12 years of age, who was legally adopted by the petitioner's wife in China with his consent, when the child was less than 3 months old.

The record further establishes that the child has been in the custody of and has resided with the petitioner's wife in China since his adoption in 1947, except for the separation caused when she joined her husband to take up her residence in the United States during 1957. The adoptive father now desires to bring the child to the United States to make his home.

Section 2 of the Act of September 11, 1957 (Public Law 85-316) extends immigration privileges to "a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of and has resided with, the adopting parent or parents for at least two years * * *." These provisions are remedial in nature and were enacted by Congress to reunite an adopted child with his parents where a *bona fide* family relationship has been interrupted.

Consistent with this Congressional purpose, I interpret the provisions of the law to require that the 2-year legal custody and residence of the adopted child be had with both the adoptive parents where 2 exist or with one when the family unit consists of only one adoptive parent. In other words, it is restoration of a *bona fide* family relationship which is the Congressional objective. Since the child in this case has not resided with his adoptive father, the petitioner herein, for the required 2 years, the petition must be denied.