MATTER OF Y—K—W—

In VISA PETITION Proceedings

A–12693027

*Decided by the Attorney General February 28, 1961*

Adopted child—Custody and residence with one adoptive parent.

Two-year legal custody and residence requirement imposed upon an adopted
child under the 1957 amendment to section 101(b)(1) of the 1952 Act is
satisfied when custody and residence have been with only one of the adop-
tive parents rather than both. (Overrules *Matter of C—F—L—*, 8—151.)

## BEFORE THE ATTORNEY GENERAL

**ORDER:** The order of the Board of Immigration Appeals, dated
January 27, 1961, dismissing an appeal herein is disapproved. The
petition, to classify the status of the beneficiary as the adopted
child of the petitioner for the purpose of issuance of a nonquota
immigrant visa, is granted.

---

This case is referred to me by the Board of Immigration Appeals,
pursuant to the provisions of 8 CFR 3.1 (h)(1)(ii), with a request
that the holding in *Matter of C—F—L—*, 8—151, which is cited as
authority for the decision denying the application herein, be reap-
praised in light of District Court decisions which disagree with it.

Under sections 101(a)(27)(A) and 205 of the Immigration and
Nationality Act (8 U.S.C. 1101(a)(27)(A); 8 U.S.C. 1155) a child of
a citizen of the United States is entitled to nonquota immigrant
status. Section 101(b), as amended by section 2 of the Act of Sep-
tember 11, 1957 (P.L. 85–316, 71 Stat. 639), provides that:

(1) The term "child" means an unmarried person under twenty-one years
of age who is—

\*         \*         \*         \*         \*

(E) a child adopted while under the age of fourteen years if the child has
thereafter been in the legal custody of, and has resided with, the adopting
parent or parents for at least two years \* \* \*. (8 U.S.C. 1101(b))

*Matter of C—F—L, supra*, involved a family of Chinese deriva-
tion. The father, a naturalized United States citizen, brought his

176

wife to the United States in 1957 when he returned from a brief visit to Hong Kong leaving behind the child they had adopted in 1947.[1] The boy had lived with his adoptive mother for 10 years but he had not lived for any appreciable time with his adoptive father.

The then Attorney General held the child not to be a child entitled to nonquota status within the meaning of the provisions of section 101(b) set forth above. In his decision he stated:

\* \* \* These provisions are remedial in nature and were enacted by Congress to reunite an adopted child with his parent or parents where a *bona fide* family relationship has been interrupted.

Consistent with this Congressional purpose, I interpret the provisions of the law to require that the 2-year legal custody and residence of the adopted child be had with both the adoptive parents where 2 exist or with one when the family unit consists of only one adoptive parent. In other words, it is restoration of a *bona fide* family relationship which is the Congressional objective. Since the child in this case has not resided with his adoptive father, the petitioner herein, for the required 2 years, the petition must be denied.

Thereafter, the issue presented by *Matter of C—F—L—* was considered by the courts in three cases. In the first of these, *Ng Fun Yin v. Esperdy*, 187 F. Supp. 51 (S.D. N.Y., 1960), the adoptive father was a naturalized citizen. He had married a Chinese alien in 1921 and emigrated to the United States in 1923. He subsequently returned to China on three occasions, residing with his wife there from approximately June 1928 to May 1933; July 1934 to April 1935; and July 1947 to May 1949. On the occasion of his last stay in China the husband and wife adopted a son, in accordance with the laws of China, in October 1948. The husband remained with his wife and child until May 1949, a period of somewhat less than eight months, before returning to the United States. The wife and adopted child continued to reside together in China and Hong Kong. The father at all times supported both his wife and his adoptive son.

In May 1959, the father filed a petition with the Immigration Service on behalf of his wife and adopted son. The petition was approved as to the wife. However, it was denied as to the son on the ground that the son could not be considered a "child" within the meaning of section 101(b)(1)(E) because he had not resided with plaintiff for at least two years, the decision being based on the Attorney General's ruling in *Matter of C—F—L—*, *supra*. The father then instituted an action to declare the decision invalid. In granting the petition, District Judge Cashin stated:

---

[1] Actually, the petitioner's wife had adopted the child with the petitioner's consent. The Board of Immigration Appeals concluded that under Chinese law this accomplished an effective adoption by both adoptive parents. The validity of this conclusion has been assumed in *Matter of C—F—L—* and in subsequent cases.

177

I must respectfully disagree with the conclusion of the Attorney General. In so disagreeing I do not at all reject the general principle relied upon by the Attorney General that the purpose of the amendment in question is to foster continued *bona fide* family relationships. Rather, I believe that general purpose can be implemented only by granting plaintiff's adopted son nonquota immigrant status. There is no doubt whatsoever that plaintiff and his wife have, for years, had a *bona fide* family relationship. There is also no doubt that plaintiff's wife and plaintiff's adopted child have had, for years, a *bona fide* family relationship. The only way in which these two relationships can be maintained is to allow all three of the individuals involved to maintain a single residence. This result cannot at all be achieved merely by allowing the wife to rejoin her husband. If only that were done, the bond between mother and child would be broken. If the bond between the mother and child is sought to be maintained, the bond between the wife and husband must be broken. I cannot ascribe to Congress an intent to condone such an illogical result. A true family relationship can exist only if the family is a unit. Each member is an integral and essential part of that unit. To maintain that unity all of the individuals must reside together. Thus, I determine that the Congressional intent is fully met in the instant case, and the plaintiff's son is entitled to nonquota immigrant status. (187 F. Supp. at pp. 53–54.)

The Attorney General's ruling in *Matter of C—F—L—* was also considered in two unreported District Court cases. In *Toy You Wong Ng* v. *Esperdy* (S.D. N.Y., Civil Action No. 60–4043, 1960) the plaintiff was a naturalized citizen of the United States and a 49-year-old native of China. She married her husband in China in 1928 and resided there until she left China in 1949 to join her husband in this country. In April 1942, with the consent of her husband, she adopted the child who was born on June 28, 1940. The husband resided with his wife and the adopted child in China for approximately 4 or 5 months in 1949. Plaintiff and her husband supported the child continuously since his adoption. The petition was administratively denied on the ground that, although the child had resided with the adoptive mother for over 7 years, he had not resided with the husband for two years and did not satisfy the statute as interpreted in *Matter of C—F—L—*, *supra*. On November 7, 1960, Judge Palmieri granted the plaintiff's motion for an injunction relying on Judge Cashin's decision in the *Ng Fun Yin* case. Judgment was entered in favor of the plaintiff declaring the beneficiary a child within the meaning of section 101(b)(1)(E) of the Immigration and Nationality Act.

The second unreported case is *Gim Leong Fong* v. *Swing, et al.* (D.C. D.C., Civ. No. 1068–60, 1960). Plaintiff was a citizen of the United States and a resident of California. In 1933 he married a Chinese alien in China and thereafter returned to this country. In 1946, with the plaintiff's consent, his wife in China adopted a child born there in 1944. Since adoption, the child had remained in the wife's custody, accompanying her to Hong Kong in 1953. After 1953, the plaintiff made three trips to Hong Kong to be with his

family, the total time spent with the family being approximately one year. On the principle that the judicial determinations should be uniform, Judge Hart followed Judge Cashin's holding in *Ng Fun Yin*, rather than the Attorney General's decision in *Matter of C—F—L—*.

In the instant case, the petitioner is a naturalized citizen of the United States. He and his wife were married in China in 1921. His wife is a permanent resident of the United States who has resided with him in this country since her admission in 1954. Both are natives of China. The beneficiary of the petition for non-quota classification is their adopted son. He is also a native of China and will reach his 21st birthday on March 18, 1961. He was adopted by the petitioner and his wife in China in 1948, and lived there continuously with the latter between 1948 and 1954, when the adoptive mother was admitted to the United States for permanent residence. No claim is made that the child ever resided with his citizen adoptive father. However, the child has been wholly supported by his adoptive parents since adoption. The father has applied for nonquota status for him in order that he may obtain a visa and come to the United States to make his home with his parents.

The record discloses that no question has been raised as to the legality of the adoption or of the *bona fides* of the relationship between the husband and wife or between either of them and the adopted son. Nevertheless the petition for nonquota status has been administratively denied on the authority of *Matter of C—F—L—*, *supra*. As a consequence, both parents are in the United States and the son is prevented from joining them.

An adopted child falls within the definition contained in section 101(b)(1)(E) of the Immigration and Nationality Act, as amended, only if he has "been in the legal custody of, and has resided with, the adopting parent or parents for at least two years * * *." In context, the phrase "adopting parent or parents" is not precise and is susceptible, as the previous decisions show, of more than one interpretation.

Although the legislative history of section 101(b)(1)(E) is not extensive, it provides support for a liberal interpretation of the statutory language in accordance with the result reached in *Ng Fun Yin* v. *Esperdy*, *supra*. The provision was enacted "to prevent hardship in cases where the child is chargeable to a heavily over-subscribed quota and would not otherwise be able to accompany his adoptive parents. Adequate safeguards are included to prevent abuse." H. Rept. No. 1057, 85th Cong., 1st Sess., p. 4. Each of the differing interpretations recognizes the provision as being remedial in nature and as intending to preserve *bona fide* family relationships.

Against this statutory history of preventing separation of families

179

should be weighed the "adequate safeguards" also referred to. It does not appear, however, that a more strict interpretation of the statutory qualifications would be reasonably related to ascertaining whether or not the family relationship was *bona fide*. It would seem that this safeguard may be better established by looking at the surrounding circumstances of the adoption and making a determination on the facts that, assuming the statutory qualification to be met, the legislative purpose would be served in a particular case.

Once the remedial purpose of preserving, rather than interrupting, *bona fide* family relationships—and permitting the family to live as a unit in this country—is recognized, the reasoning in *Ng Fun Yin* v. *Esperdy*, *supra*, appears to be compelling. The citizen father and the resident mother must either leave this country to maintain the family unit or the son must be accorded nonquota status and admitted. In view of the general remedial intent of section 101(b)(1)(E), the latter choice appears to me to be required, and I conclude that the requirement of the statute that legal custody and residence be had with "the adopting parent or parents" is satisfied if had with only one of the adopting parents for the requisite two years.[2] Therefore, the holding in *Matter of C—F—L—*, *supra*, is reversed, and I direct that the order of the Board of Immigration Appeals in the instant case be disapproved. I further direct that petitioner's application to classify the status of the beneficiary as the adopted child of the petitioner for the purpose of issuance of a nonquota immigrant visa be granted.

In reaching my decision, I wish to emphasize that in this case there has been no challenge to the *bona fides* of the family relationships involved. The validity of the marriage of the parents and the adoption of the child are unquestioned. Nor is any question raised as to whether the child was in the legal custody of and resided with the wife for the required period. There is, therefore, no evidence of fraud. The remedial and humanitarian purposes of section 101(b)(1)(E) would not be applicable in any future case in which such evidence is present.

---

[2] In its report, the Senate Committee on the Judiciary indicated that it believed section 101(b)(1)(E) to contain "[a]dequate safeguards * * * to prevent abuse." S. Rept. No. 1057, *supra*, p. 4. Nothing in the report or elsewhere in the legislative history indicates that legal custody and residence with one parent alone fails to supply the safeguards which were regarded as adequate.