## MATTER OF LAU

## In VISA PETITION Proceedings

### A-13550221

*Decided by Board June 5, 1964*

Beneficiary's adoption in China by petitioner's mother on behalf of, and without the knowledge of, the petitioner and without petitioner knowing of the existence of, or personally meeting, beneficiary until latter was over 7 years of age does not constitute a valid adoption in accordance with Article 1079 of the Chinese Civil Code since it has not been established the adoption was effected in writing or the beneficiary was brought up since infancy, meaning under 7 years of age, as a child of the adopter.

The case comes forward pursuant to certification of the order of the District Director, Honolulu, Hawaii dated January 16, 1964 directing that the petition be granted.

The petitioner, a native of China, a naturalized citizen of the United States, 86 years old, male, seeks preference quota status under section 203(a)(4) of the Immigration and Nationality Act on behalf of his married adopted son, a native and citizen of China, who is alleged in the visa petition to have been born on June 16, 1927 at Ha Sa Ping Village, Toyshan, China.

The petitioner made a sworn statement to a Service officer on May 1, 1963 (Ex. C). He testified that he was first married in 1930 to Wong Shee in Ha Sa Ping Village, who gave birth to a son in 1932. His first wife died in 1933 and their son died in 1934. Then he was married for the second time in 1936 at the same village to Fong Shee by whom he had no children. His second wife ran off about 1942 during the war with Japan. He identified the beneficiary as his adopted son whose date of birth he did not know. He explained that his mother, an old-fashioned woman, thought she would bring in a male child to carry on in the household as his son and that she adopted the beneficiary in 1934 while he was not in China. There was no official record made of this adoption. He stated that he learned about the adoption from one of his cousins who came to Honolulu on his way to Peru. He first saw the beneficiary on his 1935 trip to China when the

child was about eight years old and was living with his mother and his nephew's wife, Liu Shee. He remained in China for approximately nine months during this trip and the child resided with him and his second wife and that when he left China in 1936 the child remained with his wife in the same household as Liu Shee, his niece. He next saw the beneficiary in December 1955 in Hong Kong and the beneficiary resided with him in his household as his son until he left Hong Kong in February 1956. The beneficiary came to Hong Kong in December 1955 accompanied by his wife and two daughters. The petitioner's second wife had already left him about 1942 or 1943. He explained that an affidavit dated December 5, 1962 in which he stated that he had adopted the beneficiary as his son in 1932 and that he resided with his first wife from 1932 to 1933 and with his second wife from 1935 to 1943 did not reflect the facts as he had told them to his attorney but that the facts regarding the adoption as set forth in his sworn statement were true to the best of his knowledge; that his wife and his natural son passed away prior to the adoption of the beneficiary by his mother.

The petitioner subsequently made trips to China in 1957 and 1960, of two to four months duration respectively, and he lived with the beneficiary and his family when he went to China in 1957 but in 1960 he lived at a hotel because the beneficiary's quarters were too small. He acknowledged the correctness of a summary of his situation would show that he spent nine months with the beneficiary in 1935 to 1936 when he was approximately eight years of age; that he did not see him again until December 1955 when the beneficiary was 28 years of age when he spent about two months with him and again two months with him in 1957, making a total of 13 months that he had resided in the same household with the beneficiary during his lifetime. The petitioner stated that when he left China in 1936, when the beneficiary was approximately nine years of age, the beneficiary resided with his second wife and his nephew's wife, Liu Shee, also known as Wong Shun. He stated that his second wife took care of the child up until the time she ran away then his nephew's wife (his niece) took care of him. The petitioner stated that he sent money to take care of the beneficiary but that he only started keeping records since 1960, although he sent money previously ever since his mother adopted the beneficiary, except during the war years.

In a supplementary sworn statement dated May 10, 1963 the petitioner stated that the beneficiary was born in China in 1927, sixth month sixth day, corresponding to July 4, 1927 which information he received from his cousin, although no official record exists of the beneficiary's birth. He reiterated that his true son died in the 10th

month of 1933, Chinese calendar, corresponding to the 11th month of the Western calendar. The petitioner again refuted an affidavit submitted by his nephew's wife, Wong Shun, dated December 18, 1962, to the effect that the beneficiary was adopted in 1933 at the age of four years; that the beneficiary was six years old in 1933 because the petitioner went to China in 1935 when the beneficiary was eight years old and he remembered starting him off to school. The petitioner stated that his mother adopted the beneficiary on her own accord and never told him and that he did not take any action toward making the child his adopted child but that he consented to and accepted this child as his adopted child. He stated that he has continued to support this adopted son and as far as he was concerned on the day his mother adopted the beneficiary that was the day he had an adopted son.

The District Director's prior order, dated May 16, 1963, found that based upon the testimony of the petitioner and all available evidence, the beneficiary was approximately seven years of age at the time the claimed adoption took place by the petitioner's mother in his behalf and that the petitioner himself did not reside with the beneficiary until after his eighth birthday. This conclusion is based upon a finding that the beneficiary was born in July 1927. He also finds that the petitioner could not have resided with the beneficiary for a period of more than 9 months prior to the beneficiary's 21st birthday nor more than 8 months after the beneficiary reached the age of 21 years, 4 months of which were in the same city but not in the same household. The District Director concluded that the adoption was not in accordance with Article 1079 of the Chinese Civil Code which provides that adoption shall be effected in writing, unless the person to be adopted has been brought up as a child of the adoptive parents since "infancy" which is construed to mean a child not more than 7 years of age. The District Director concluded that the petitioner has failed to establish that he is a parent as defined in section 101(b)(2) of the Act or that the beneficiary was ever a "child" as defined in section 101(b)(1)(E) of the Act, and that the claimed adoption could not have been recognized as legal under the Chinese Civil Code; that the petitioner is the only remaining partner to the claimed adoption and he has failed to establish that he has had legal custody of and has resided with the beneficiary for the minimum period of two years as required by section 101(b)(1)(E). He ordered that the visa petition be denied.

On appeal, by order dated September 25, 1963, after citing authorities, the Board held that since the beneficiary was born on July 4, 1927, adoption under the Chinese law could have been possible in that the petitioner's mother had adopted the child on his behalf before July 4, 1935 when the beneficiary became eight years of age, since under

Article 124 of the Chinese Civil Code ages are reckoned from the date of birth.[1] Our decision ordered that the District Director should consider the case in the light of the holding in *Matter of Moon*, 9 I. & N. Dec. 633 and *Matter of Yee Kwong Woo*, 9 I. & N. Dec. 176. We remanded the case for additional proof of the age at which the petitioner claimed to have adopted the child, and to submit proof of support, letters or photographs although the petitioner admitted that he did not know of the adoption until a year after it occurred.

At remand, counsel for the petitioner submitted two affidavits by Lau Sa Nim and Liu Shee in support of the petition. The affidavit of the beneficiary, Lau Sa Nim, asserted that he was born on the 16th of June in 1929 and that he was adopted by the petitioner in 1933 when he was four years old; in addition, he submitted a Hong Kong Identity Card issued to him on February 9, 1956 showing that he was then 27 years of age. The affidavit of Liu Shee also known as Wong Shun, the niece, repeats her previous affidavit that she was present in 1933 when the beneficiary was adopted at the age of four years; that when, the second wife of the petitioner disappeared in 1944 during the Japan War, she took care of the beneficiary in her house since that year.

The order of the District Director, dated January 16, 1964, refers to this additional evidence, and concedes that an act of adoption occurred in 1933 when the beneficiary was either four or six years of age and that this adoption was valid under Chinese law. This finding is directly contrary to the testimony of the petitioner that his first wife died in 1932, that his natural son by that first wife died in November 1933, that the beneficiary was born on July 4, 1927, and that he questioned this same niece's affidavit about the beneficiary being four years old in 1933 but on the contrary alleges that he was six years old in 1933. The petitioner also has stated that the beneficiary was adopted in 1934 after the death of his natural son in order to provide him with an heir. The District Director in his order of January 16, 1964 comments that the petitioner submitted no proof of support, no letters, no photographs dated prior to 1958. Apparently nonplussed by this dilemma, and unable to reach a logical conclusion, the District Director ordered that the petition be granted without citing any Chinese law, and certified his decision to this Board.

In a memorandum of law dated March 3, 1964 the Service takes sharp exception to that portion of our decision of September 25, 1963 which holds that a valid infancy adoption occurred merely upon the

---

[1] This conclusion appears to be of doubtful validity since the Judicial Yuan Advisory Opinion, 1942, No. Yuan 2332, cited at page 153 of 8 I. & N. Dec. 151 states that the "infancy" provision shall be construed to mean a child not more than 7 years of age; according to the Far Eastern Section of the Library of Congress, the age is computed according to Western reckoning.

petitioner's mother taking the beneficiary into her household in China without the petitioner's knowledge, and the child's residence thereafter with the peitioner's mother. The Service urges that under such a theory, an immigration benefit could enure whether neither the petitioner nor his wife had ever seen the beneficiary or even knew of his existence; and where the sole basis for the claim to status is the alleged unwritten and undeclared action of a long-deceased parent or grandparent. The Service urges that the decision in the instant case must rest on whether the evidence establishes a valid infancy adoption when the petitioner himself first met the beneficiary in 1935, and, if so, whether there was the requisite two years of legal custody and residence with the petitioner and/or his second spouse.

A memorandum from Dr. Tao-tai Hsia, Far Eastern Law Division, Library of Congress dated May 25, 1964 sets forth again that Article 1079 of the Chinese Civil Code provides that adoption must be effected in writing, unless the person to be adopted has been brought up since infancy as the child of the adopter. The Judicial *Yuan* Interpretation Chinese Republic Year 31 (1942) No. 2331 defined "infancy" in the above paragraph as a child who is under seven years of age and Dr. Hsia has informally stated that this is to be interpreted as meaning Western reckoning. The Supreme Court Decision Chinese Republic Year 29 (1940) *shang*, No. 702 stated that if a childless person, subsequent to the book on Family Law of the Civil Code coming into force, takes another person's child as his own child and such act meets the adoption requirements in the Civil Code, although the party (the child) has been called a szutzu (instituted heir) rather than yang-tzu (adopted son), he is nevertheless deemed to be an adopted son in the Civil Code.[2]

With regard to the question of how a civil case is to be decided if no applicable law can be found, Article 1 of the Civil Code [3] provides: In civil matters if there is no provision of law applicable to a case, the case shall be decided according to custom. If there is no such custom, the case shall be decided in accordance with the general principles of law.

While the Service makes reference to a work entitled *An Outline of Modern Chinese Family Law* by Marc Van der Valk (Peking, 1939), to deprecate the importance of the "institution of an heir" as contrasted to an adoption under the Chinese Civil Code, it nevertheless appears according to the Far Eastern Law Division of the Library of Congress, that both an instituted heir and an adopted son are deemed

---

[2] Mei, Chung-hsieh and T'ao Po-Ch'uan, ed. *Liu fa liu yung hiu pien* (Collection of six kinds of materials on six codes), II, Taipei, 1958, p. 541.

[3] Book I, General Principles of the Civil Code was promulgated on May 23, 1929, and came into force on October 10 of the same year.

to be adopted sons in the Civil Code if the act meets the adoption requirements in the Civil Code.

From the evidence available in this confused record, we believe that the best evidence consists of the sworn statements of the petitioner whose testimony appeals to us as being both forthright and honest. The petitioner has contradicted the affidavit of his niece and the subsequent affidavit of the beneficiary does not appear to be persuasive. We will make a finding that the beneficiary was born on July 4, 1927; that the beneficiary was adopted by the petitioner's mother after the death of his first son in November 1933 probably in 1934; that the petitioner did not learn about the adoption until he heard from a cousin probably in 1935; that he did not meet the beneficiary until he went to China in 1935 when the beneficiary was eight years old and remembered starting him off to school; and that the beneficiary did not reside with the petitioner and with his second wife until 1935 when he was eight years of age.

The burden of proof of establishing eligibility for the benefit sought under the immigration laws rests upon the petitioner. *Matter of Y—K—W—*, 9 I. & N. Dec. 176 deals only with the matter of the two-year legal custody and residence requirement contained in section 101 (b) (1) (E) of the Immigration and Nationality Act as amended and holds that such custody and residence may be with the adoptive mother, assuming that a valid infancy adoption has taken place. However, in the instant case, the petitioner has not borne the burden of establishing that a valid infancy adoption has taken place. We believe that the evidence establishes that the petitioner did not know of the existence of the beneficiary until he was over seven years of age and did not personally meet the beneficiary until he was eight years of age. There is no evidence that the adoption was effected in writing as required by Article 1079 of the Chinese Civil Code and the petitioner has not borne the burden of establishing that the beneficiary was brought up since infancy, meaning under seven years of age, as a child of the adopter. The visa petition will be denied.

ORDER: It is ordered that the order of the District Director dated January 16, 1964 granting the visa petition be reversed and that the visa petition be and the same is hereby denied.