MATTER OF LEE

In Visa Petition Proceedings

A-17523878

*Decided by Board September 30, 1971*

Petitioner's alleged adoption of beneficiary in China in 1943 when latter was 8 years of age has not been established for immigration purposes since there was no written adoption agreement nor was beneficiary brought up as a child of the adopter since infancy (under 7 years of age) in accordance with Article 1079 of the Chinese Civil Code. Further, even if adoption occurred as alleged, beneficiary's subsequent return in 1946 to Indonesia where he lived with his natural mother from 1946 to 1956 raises the possibility of mutual termination of the adoptive relationship under Article 1080 of the Chinese Civil Code, and petitioner has failed to offer sufficient evidence to explain away the doubt raised as to the continuing effect of the "adoption".

ON BEHALF OF PETITIONER: Sanford A. Peyser, Esquire
401 Broadway
New York, New York 10013

Petitioner, a permanent resident alien, applied for preference status for the beneficiary as her adopted unmarried son under section 203(a)(2) of the Immigration and Nationality Act. The District Director denied the application in an order dated June 19, 1970, and the petitioner appeals from that denial. The appeal will be dismissed.

The beneficiary is an unmarried male, age 38, who was born in China in 1933. His natural father is Lee Ming Sam. Lee Ming Sam married the beneficiary's natural mother, Lam Tjon Ho, in 1928. There were three other children issue of their marriage who were born in 1935, 1940 and 1953.

In 1933, the beneficiary's father, Lee Ming Sam, moved his family to what is now Indonesia. In 1941, Lee Ming Sam, accompanied by the beneficiary who was then eight years old, returned to his native village in China to visit his mother. Shortly thereafter the Japanese invaded the Dutch East Indies and Lee Ming Sam, losing all communication with his wife, Lam Tjon Ho, and

766

his other two children, assumed that they had perished. The Japanese soon therafter occupied the village in China where Lee Ming Sam was staying with the beneficiary.

In 1943, Lee Ming Sam, out of concern for the upbringing of the beneficiary, and upon the advice of his mother, purportedly married Sao Kin Louie, the petitioner in this case. Sao Kin Louie then went through a "ceremony," dinner party and public announcement to Lee Ming Sam's clansmen, which allegedly constituted an adoption of the beneficiary. Shortly thereafter communication with Indonesia was reestablished, and it was learned that Lam Tjon Ho and the other children were alive. The petitioner claims that Lam Tjon Ho wrote to her in 1943 and assented to Lee Ming Sam's marriage to the petitioner, and also to the "adoption" of the beneficiary. No independent evidence was presented to prove this allegation. All that the file contains in this regard are letters from Lam Tjon Ho to the petitioner, written in 1958, 1959 and 1960, containing Lam Tjon Ho's consent to the "adoption" which took place over fifteen years earlier in China.

Lee Ming Sam took the beneficiary back to Indonesia with him in 1946, leaving the petitioner in China. The beneficiary lived with his father and natural mother in Indonesia from 1946 until 1956. He then went to Taiwan. The petitioner left China and went to Hong Kong in 1954, where she stayed until 1967, when she was admitted to the United States as an immigrant. The beneficiary joined the petitioner in Hong Kong in 1959, and stayed with her until 1967. The petitioner apparently supported the beneficiary while he was attending school in Taiwan, "with funds received from my husband in Indonesia."

Section 203(a)(2) provides for visa preference for qualified immigrants who are the unmarried sons or daughters of aliens admitted for permanent residence. There is no definition of "son" or "daughter" in the Immigration and Nationality Act, but "child" is defined in section 101(b)(1)(E) to include a child adopted while under the age of fourteen years if the child has thereafter been in the legal custody of, and has resided with, the adopting parent or parents. We have previously held that a child adopted in compliance with section 101(b)(1)(E) of the Act qualified as a "son" or "daughter" for purposes of receiving preference status, *Matter of Jue*, 12 I. & N. Dec. 296 (BIA, 1967); *Matter of Yue*, 12 I. & N. Dec. 747 (BIA, 1968).

The issue in this case is whether there was a valid adoption which also meets the requirements set forth in section 101(b)(1)(E) of the Immigration and Nationality Act. To deter-

mine the validity of the adoption, we must look to the applicable adoption law. Inasmuch as we are concerned with an adoption which was supposed to have been accomplished in China in 1943, the provisions of the Civil Code of the Republic of China are controlling.

Article 1073 of the Civil Code required that the adopter be at least twenty years older than the person to be adopted. In the present case the petitioner, born in 1926, is only five years older than the beneficiary. In a prior precedent decision, this Board recognized an adoption as valid for immigration purposes where there are only a sixteen-year age difference, *Matter of Chan*, 12 I. & N. Dec. 513 (BIA, 1967). We held that such an adoption was not automatically void, but only voidable. We need not decide whether we will extend the *Chan* rule to the present case, because there are even more fundamental defects in the claimed adoption.

Article 1079 required that the adoption be in writing, unless the person adopted had been brought up as a child of the adopter since infancy. Infancy has been construed by the Supreme Court of China to refer to that period of time during which a child is under the age of seven years, *Matter of Lau*, 10 I. & N. Dec. 597 (BIA, 1964). In the present case the beneficiary was eight years old when the purported adoption took place. This could not have been an infancy adoption, and there was no written adoption agreement.

Article 1080 of the Code provided for the mutual termination of the adoptive relationship. The fact that the beneficiary went back to Indonesia in 1946 to live with his natural mother until 1956 raises the possibility that the relationship may have been terminated. The petitioner has failed to offer sufficient evidence to explain away the doubt raised as to the continuing effect of the 'adoption."

The District Director was correct in holding that the petitioner has not borne the burden of establishing the beneficiary is an adopted child as defined in section 101(b)(1)(E) of the Immigration and Nationality Act. Since he is not an adopted child for immigration purposes, the beneficiary is not eligible for preference status under section 203(a)(2) of the Act. The appeal will be dismissed.

**ORDER:** The appeal is dismissed.